**Timothy Allen Chey, Esq. (No. 172096)**
**Attorney at Law**
**3266 Lowry Road**
**Los Angeles, CA 90027**
**Telephone: (310) 882 0076**

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | Case No: **2:15-cv-04145** |
| | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; DECLARATION** |
| **SUSAN FAUSTINO**, | |
| Plaintiff, | |
| vs. | **Date Action Trial Date: None Set** |
| | **Date: Time: Dept: Judge:** |
| **ALCON LABORATORIES, INC** | **September 21, 2015** |
| **(A division of NOVARTIS AG)** | **9:00 a.m. Courtroom 850** |
| Defendants | **Hon. R. Gary Klausner** |
| | **Filed: June 3, 2015** |
| | **MANDATORY CHAMBERS COPY** |

Complaint - 1

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**………………………………………………2

**FACTUAL BACKGROUND**……………………………………………...3

   **I.** **Plaintiff's eyes were seriously injured using Drug Company's product. The complaint clearly shows that**………………………………………5

  II. **Plantiff's eyes were severely injured immediately upon putting the eye drops into her eyes. She felt excruciating and horrible pain in her eyes after she put the Systane eye drops in her eyes**………………………………………5

A. **PLAINTIFF'S CLAIMS ARE NOT PREEMPTED**…………………… 4

   1. Defendant Cannot Overcome the Strong Presumption Against Preemption…………………………………………… 4

      a. Plaintiff's Claims Are Not Expressly Preempted………………… 5

   2. Plaintiff's Claims Does Not Seek to Impose "Requirements" Within The Meaning Of Section 379r…………………………………… 6

   3. To The Extent That Plaintiff's Claims Can Be Read As Seeking To Impose Requirements Within The Meaning Of Section 379r, They Are Identical To Federal Food Labeling Requirements………………………………… 7

b. Plaintiff's Claims Are Not Impliedly Preempted………………… 9

   III. THE PRIMARY JURISDICTION DOCTRINE IS INAPPLICABLE……10

  IV. **Defendant Drug Company has twisted the facts of the Complaint to solely rely on a failure to warn as their entire and complete defense**……………………6

**ARGUMENT**…………………………………………………………...7

**I.** **Defendant's motion to dismiss is an inappropriate attempt to challenge the factual basis of the complaint.**

   **A.** **The Drug Company is not entitled to detailed factual pleading**……………8

  B. **Susan has sufficiently pleaded her manufacturing-defect claim**…………9

  C. **Susan has sufficiently pleaded her failure-to-warn claim**……………12

D.   **Susan has sufficiently pleaded her negligence and gross negligence claims……..13**

E.   **The complaint contains sufficient allegations that the Drug Company knew or should have known that patients could receive severe eye injury while properly using the eye drops…………………………………………………..14**

F.   **The complaint sufficiently alleges that the Drug Company' failure to warn was a proximate cause of Susan's severe eye injury to both eyes using the Drug Company's eye drops…………………………………………15**

G.   **Susan has sufficiently pleaded her design-defect claim………..17**

H.   **Susan has sufficiently pleaded her negligent misrepresentation claim…..19**

I.   **The Drug Company's actions in other similar cases and in ther matter demonstrate that they have notice of the claims against them…………………19**

J.   **Alternatively, if the Court grants the Drug Company' motion, Susan requests leave to amend her complaint to add additional factual allegations.**

## II. Susan's Claims Should Not Be Dismissed under Rule 12(b)(6) Because His Allegations State Claims for Relief that Are Plausible on Their Face.

# TABLE OF AUTHORITIES

## CASES

*Schifando v. City of Los Angeles*, 31 Cal.4th 1074, 1081, 6 Cal.Rptr.3d 457 (Cal. 2003)…….4

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)………………………………..4

*McDowell v. N. Shore-Long Island Jewish Health Sys.*, Inc., 839 F. Supp. 2d 562, 565 (E.D.N.Y. 2012)………………………………………………………………...………..5

Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001))………………………………….6

Peck v. Hoff, 660 F.2d 371, 374 (8th Cir. 1981)……………………….…………..………7

North Star Int'l v. Arizona Corp. Commission, 720 F.2d 578, 581 (9th Cir. 1983)…………7

Hovsepian v. Apple, Inc., 2009 U.S. Dist. Lexis 117562, at *5 (N.D. Cal. 2009)………….8

Fed. R. Civ. P. 8(a)(2). 550 U.S. 544, 556, 570 (2007)………………………...………..8

Farmer v. Countrywide Financial Corp., 2009 (C.D. Calif. 2009)……………………..…9

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346(2005)……………………..…9

Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005)………………………………...10

8  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009)…………………………………10

Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008)…..11

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)……11

*Wyeth v. Levine,* 129 S.Ct. 1187, 1197-98 (2009)………………………………………12

22 Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A)L Sec. 1125……...………12

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)………………………………...………13

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153, 131 Cal.Rptr.2d 29 (Cal. 2003)………………………………………………………………...………14

Westside Center Assocs. v. Safeway Stores 23, Inc., 49 Cal.Rptr.2d 793, 802, 42 Cal.App.4th 507, 521-22 (Cal. Ct. App. 1996))………………………………………………………15

CRST Van Expedited, Inc. v. Werner Enter., Inc., 479 F.3d 1099, 1107 (9th Cir. 2007)…16

Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989 (2d Cir. 1980)..……………17

## PRELIMINARY STATEMENT

Susan Faustino's life has been spent helping other people. She was a registered nurse (RN) for over 20 years and broke her back while lifting a 300 pound patient during an emergency. She then became a full-time missionary and also a documentary film producer showing miraculous ways people came to God. She's presently working on her doctorate in divinity.

Plaintiff (Susan)'s eyes were seriously injured using Defendant's (Drug Company) product. The complaint clearly shows that. Alcon's lawyers wish to dismiss the complaint by filing a frivolous motion designed to distract the court from the real truth: **Drug Company's product was dangerous and caused severe injuries to Susan's eyes.** Drug Company has previously recalled it's eye-drops in 2006 due to complaints of contamination.

Drug Company's Motion boils down to a basic argument: Because Susan used the phrase 'failure to warn' in her Complaint, the entire Complaint against the Drug Company has to be dismissed because of 21 U.S.C. § 379r. This is unbecoming and not worthy of the court's attention. The motion completely ignores all of the other very serious claims.

As set forth in more detail below, Drug Company's Motion misinterprets applicable federal and state law, misunderstands or mischaracterizes Plaintiff's allegations, and improperly

asks the Court to make evidentiary determinations that are inappropriate in a Motion for Judgment on the Pleadings.

First, Drug Company's pre-emption arguments are sorely misplaced. Not only has the United States Supreme Court recently reiterated that the presumption against preemption is strong (especially in areas such as over the counter supplements that are traditionally regulated by the states), case law squarely rejects the notion that false product claims are preempted. *See e.g. Altria Group, Inc. v. Good,* 129 S. Ct. 538 (2008) (affirming lower court decision and holding claims based upon deceptive labeling of cigarettes are not preempted); *Holk v. Snapple Beverage Corp.,* 575 F.3d 329 (3rd Cir. 2009) ("Snapple") (holding that claims alleging that labeling of beverage was deceptive due to presence of sweetener in product were not preempted). These cases make clear that the claims here are not preempted – indeed, Defendant has not and will not point to a single case in which a federal court has held that false claims about a product's effectiveness or dangers have been held to be protected under federal law.

Second, Defendant either misunderstands or mischaracterizes plaintiff's complaint. This lawsuit would hardly disturb the decisions of the expert federal agency charged expressly by Congress with regulating the marketing and sale of drugs. Instead, as in *Altria,* this lawsuit is aimed at stopping misrepresentation – that the Drug Company's eye-drops have no adverse or serious reaction. <u>In this important case, Susan's eyes continue to bother her after more than a year of using the Drug Company's eye drops</u>.

Third, Drug Company's arguments attacking the sufficiency of the pleadings are also simply wrong. The Complaint contains great detail as to the specific claims at issue here - listing the negligent misrepresentations and providing detailed information regarding the specific purchase made by the Plaintiff. Indeed, as seen by the spirited (but erroneous) arguments put

forth by Drug Company, the Complaint contains more than enough information for Drug Company to understand the allegations.

The Drug Company focuses it's entire Motion on only one claim that would even marginally call 21 USC § 379r into play: Negligent Misrepresentation.

It gives very short shrift to the other important claims that have nothing to do with 21 USC § 379r: Strict Liability – Defect in the Product; Negligent Design; Breach of the Duty of Care; Gross Negligence; and Reckless Conduct;

The Drug Company is attempting every legal device possible to get off the hook and to not pursue discovery. The Court should recognize this as a frivolous motion and a huge waste of the court's time and Susan's time.

We live in dangerous times and we must hold corporations to the highest standard of care possible, especially when it comes to the most delicate parts of our bodies, namely the eyes. What is the ethcial and morally right thing to do in a case of this significance? It should be to go through discovery and flesh out if the product is actually harming people. This is too early to dismiss a case of this nature that has already been shown to affect the general public by a previous recall from the Drug Company.

Finally, the Drug Company does not contend that Susan has failed to plead the legal elements of her claims or that her claims are defective under California law. Instead, the Drug Company complains that Susan does not provide the factual specificity that they desire and mysteriously keeps referring to 'a failure to warn' as their entire basis to dismiss the severe personal injury to Susan's eyes caused by a defective product.

As pleaded in her complaint, Susan's causes of action each flow from a fairly simple set of facts: Susan bought Systane eye drops for her eyes. The eye drop was designed, manufactured,

marketed, and sold by the Drug Company. The Drug Company represented that the eye drop was designed and manufactured to give Susan a therapeutic level of eye care – to the most sensitive area of the body: the Eyes. Instead, despite proper use, Susan received a severe reaction that caused possible permanent eye damage, backed by the doctor's reports. As described more thoroughly in this response, this basic set of facts supports Susan's claims of strict products liability, breach of the duty of care, gross negligence, reckless conduct, and fraudulent misrepresentation.

Accordingly, Susan's claims should not be dismissed; her complaint provides the notice required by Federal Rule of Civil Procedure 8. (See infra, pages 3 to 10.)

This same basic set of facts has been pleaded against the Drug Company (both Novartis and Alcon) in other cases where patients have suffered severe injuries. In most of those cases, the Drug Company have simply answered the same product liability complaints. In the few instances in which the Drug Company have challenged the complaints as insufficient, courts have unanimously held that the factual allegations are sufficient as a matter of law. The majority of these cases are federal cases and, in all of the federal cases, the answer was filed or the motion to dismiss was ruled on after the U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). (See, infra, pages 10 to 12.)

Alternatively, should this Court conclude that Susan's factual allegations are deficient, Susan seeks leave to amend her complaint and plead additional factual allegations consistent with the Court's order. (See, infra, page 13.)

## FACTUAL BACKGROUND

The Drug Company designs, manufactures, markets, and sells OTC eye drops to treat eye irritation. (Compl. ¶¶ 6-7 (Dkt. 1).) An eye drop is applied by the patient and is suppose to

deliver harmless relief to the eyes, the most sensitive part of the human body. (Compl. ¶ 8.) The Drug Company designs, manufactures, markets, and sells the eye drops with the intent that the eye drops will help relieve eye irritation. (Compl. ¶ 8.) If the eye drops works as intended and is properly used by the patient, the patient should not receive any harm to the eyes. (Compl. ¶ 8.)

Susan applied the eye drops that she bought at a Safeway supermarket. She did not abuse or misuse the eye drop developed by Drug Company. Her eyes were severely injured immediately upon putting the eye drops into her eyes. She felt excruciating and horrible pain in her eyes after she put the Systane eye drops in her eyes. She couldn't move and saw her eyes were turning red. Her eyes also became hot and extremely sore especially the right eye which had whitish discharge.

**Susan lay in her bed motionless in total shock for several minutes. The pain was extremely severe and Susan thought she would lose her eye. The doctor's records show unequivocally that her eyes were injured and the eye drops were the cause.**

Prior to Susan's severe injury, numerous patients had received contaminated eye drops in 2006 while using the eye drops as prescribed. (Compl. ¶ 9.) The Drug Company knew or should have known of the possible contamination because (1) they recalled previous eye drops in the past based on customer complaints; (2) they had received information about the contamination and actually recalled all their eye drops in 2006; and (3) information about the eye drop contamination was readily available to them because they were the original culprits the first time around. (Compl. ¶ 9.)

## ARGUMENT AND AUTHORITIES

**1. Defendant Cannot Overcome the Strong Presumption Against Preemption.**

The United States Supreme Court repeatedly has instructed that there is a strong presumption against preemption of state claims. *See, e.g., Wyeth v. Levine,* 129 S. Ct 1187, 1195 (2009). "In areas of traditional state regulation, [a court must] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005). Health and Safety issues have traditionally fallen within the province of state regulation. *See Snapple,* 575 F.3d at 334; *Altria,* 129 S. Ct. at 543. ("[w]hen addressing questions of express or implied pre-emption, we begin our analysis with the assumption that the historic police powers of the States are not to be superseded by the Federal Act").

Accordingly, the Court's analysis begins with a very strong presumption that federal law does not preempt the consumer protection laws of California. As demonstrated below, Defendant cannot come close to overcoming this heavy burden of presumption against preemption.

**a. Plaintiff's Claims Are Not Expressly Preempted.**

Defendant argues that Plaintiff's claims are expressly preempted by the Food and Drug Administration Modernization Act of 1997 (21 U.S.C. § 379r), which expressly preempts food-labeling requirements that conflict with federal requirements. (Def. Mem. at 5:20-10:15). A review of the statute, however, reveals that this is not the case here – not by a long shot. Indeed, Defendant has not – and cannot – point to a single case where state law claims regarding false representations about a product's misrepresentation or warning of a dangerous product have been pre-empted by federal law. Section 379r reads as follows:

(a) In general Except as provided in subsection (b), (c)(1), (d), (e), or (f) of this section, no State or political subdivision of a State may establish or continue in effect any requirement - (1) that relates to the regulation of a drug that is not subject to the

requirements of section 353(b)(1) or 353(f)(1)(A) of this title; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.). 21 U.S.C. § 379r.

Thus, to be preempted by this provision a state law must create a requirement that (1) relates to the regulation of an OTC drug; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under the FDCA. As set forth below, Defendant has not and cannot show that either prerequisite is present in this case.

**i. Plaintiff's Claims Does Not Seek to Impose "Requirements" Within The Meaning Of Section 379r.**

Defendant has not, and cannot, demonstrate that Susan's cause of action for negligent misrepresentation, are the type of claims that Susan simply seeks to enforce Defendant's obligations under California law regarding misleading representations to consumers (in this case that the eye-drops will not cause adverse reaction), which have nothing to do with labeling requirements regulated by the FDCA. *See Altria,* 129 S. Ct.at 538 (holding that state consumer protection claim was not preempted because claim was based on a duty not to deceive and not a duty to warn as misstated by the defendants).

In other words, Defendant is not obligated by Federal law to make misrepresentative claims about the Systane eye drop – which is what the Drug Company would have to show in order to invoke the provisions of Section 379r. Instead, the Drug Company argues that there is implied control over all causes of action under this section which is not true at all.

Defendant misunderstands both the governing law as well as Plaintiff's claims. First, Plaintiff's claims include no 'failure to warn' claims that cannot be pre-empted by Section 379r. (Complaint ¶ 13). Second, the unexceptional fact that federal law requires Drug Companies to accurately state their intended use does not, and cannot, allow a manufacturer to dangerously manufacture its products and suffer no liability for it. The Supreme Court, in *Wyeth v. Levine*, 129 S.Ct. 1187, 1197-98 (2009) specifically found to the contrary, noting that "through many amendments to the FDCA and to FDA regulations, it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times."

**A. The Drug Company is not entitled to detailed factual pleading.**

Glossing over the factual allegations in Susan's complaint, the Drug Company assert that they are entitled to more detailed, specific, factual allegations under Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). But "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Twombly, 550 U.S. at 555. Indeed, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant . . . fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 555 (citations omitted). All that is required of ther short plain statement is that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 570; see also Iqbal, 129 S. Ct. at 1950 (noting that the complaint must move from "conceivable to plausible"). For the reasons discussed below, the Drug Company' motion to dismiss is fatally flawed because it ignores all of the factual allegations in the complaint and, instead, focuses on only the legal allegations. (See, e.g., Dkt. 19 at 8-9.) When the complaint is read as a whole, it is clear that Susan's complaint is more than sufficient to satisfy the Federal Rules of Civil Procedure.

The issue before the Court upon consideration of such a motion is not whether Plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." McDowell v. N. Shore-Long Island Jewish Health Sys., Inc., 839 F. Supp. 2d 562, 565 (E.D.N.Y. 2012) (citing to Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir.2001)).

In addition, motions to dismiss test the sufficiency of the complaint; in evaluating them, the court should consider only the pleading itself and matters of which judicial notice can properly be taken. Peck v. Hoff, 660 F.2d 371, 374 (8th Cir. 1981); North Star Int'l v. Arizona Corp. Commission, 720 F.2d 578, 581 (9th Cir. 1983); Hovsepian v. Apple, Inc., 2009 U.S. Dist. LEXIS 117562, at *5 (N.D. Cal. 2009). **A motion to dismiss is not the appropriate vehicle for resolving disputed evidentiary contentions.** As set forth in detail below, Susan has well met this standard of review, well within the meaning of the foregoing case law, thus warranting denial of defendants' motions in their entirety.

The Drug Company raises two challenges to the complaint that are, in essence, premature attempts to litigate the factual merits of the case. Whether those complaint allegations are correct is a matter of evidence that will be developed as the case proceeds to trial.

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint need only set forth a "short and plain statement" that gives a defendant fair notice of plaintiff's grounds for entitlement for relief. Fed. R. Civ. P. 8(a)(2). 550 U.S. 544, 556, 570 (2007) ("Twombly"). 129 S. Ct. 1937, 1949 (2009) ("Iqbal"). Fed. R. Civ. Pro. 8(a). See Farmer v. Countrywide Financial Corp., 2009 U.S. Dist. LEXIS 49553 at *52  (C.D. Calif. 2009) ("ordinary pleading rules are not meant to impose a great burden upon a plaintiff")' citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346(2005). In evaluating a Rule 12(b)(6) motion, the court should "construe the complaint in the light most favorable to the plaintiff, taking all . . . allegations as true and

drawing all reasonable inferences from the complaint in [plaintiff's] favor." Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). See also 8  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009), citing Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008).

Additionally, the United States Supreme Court has held that "[a] claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

**1. Susan has sufficiently pleaded her manufacturing-defect claims.**

The Drug Company completely and grotesiquely ignore Susan's numerous factual allegations when arguing that she has not sufficiently pleaded her manufacturing-defect claim (Dkt. 19 at 9):

- Susan was properly using the eye drops designed by the Drug Company when her eyes were severely injured (Compl. ¶¶ 6-7);

- Although properly manufactured eye drops "will not [provide] a harmful dose," (Compl. ¶ 8), Susan's eyes were severely injured as stated in medical reports (Compl. ¶ 10);

- Susan was not aware of the eye drop's defective condition, and the eye drops reached her without substantial change to its condition (Compl. ¶¶ 14-15);

- The eye drops were unreasonably dangerous because "it severely hurt her eyes when a properly functioning eye drops should have given her gentle relief" (Compl. ¶ 13); and

- The eye drops "were defective because it malfunctioned and did not perform as intended and designed." (Compl. ¶ 15).

These pleaded facts give the Drug Company more than sufficient notice of Susan's manufacturing-defect claim, especially when they concede there was already a recall on a similar eye product.

Although the Drug Company argue that Susan has not pleaded acts establishing how the eye drops caused damage she has no duty to do so. (Dkt. 19 at 9.) The Eighth Circuit has held that a plaintiff has no duty to plead or prove a specific defect under California's strict-products-liability law. Similarly, the California Court of Appeals has approvingly cited Restatement (Third) of Torts, Products Liability Section 3 for the proposition that "it may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect." Thus, the Drug Company' complaint that Susan has not pleaded facts that she has no duty to prove is disingenuous and reeks of a Drug Company that will hire the best lawyers to get itself off the hook.

Simply put, Susan pleads sufficient circumstantial facts to demonstrate that the Drug Company' eye drops was defective and caused Susan's severe injury to her eyes. Id. The doctor's own reports clearly state the injury which will be exhibited at the hearing in September.

**2. Susan has sufficiently pleaded her duty-of-care claim.**

The Drug Company alleges that Susan's complaint allegedly contains insufficient allegations regarding (a) the nature of the inadequacy of the warnings, (b) why the Drug Company should have known that the warnings were inadequate, and (c) whether the lack of sufficient warnings caused Susan's eye injury. (See Dkt. 19 at 10-11). The Drug Company' argument focuses solely on the paragraphs of Susan's original complaint that discuss the 'failure to warn' and improperly ignores all the other factual allegations. When viewed as a whole,

Susan's complaint provides a significant factual basis for her breach-of-duty claim. <u>Put another way, when would anyone be given justice for any wrongdoing by any party?</u>

**a. The complaint contains sufficient allegations that the eye drops were defective because it contained inadequate warnings that a patient could receive severe eye injuries while properly using the eye drops because the eye drops were defective with possible contamination.**

Contrary to the Drug Company's repeated mysterious and distractful argument on the 'failure to warn', Susan has plead ample facts supporting her allegation that the eye drops were defective because, among other things, it was marketed and sold with defects and misrepresenting the dangers and risks that the eye drops could cause even when used properly:

- The Drug Company designs, manufactures, markets, and sells OTC eye drops to treat eye irritation. (Compl. ¶¶ 6-7 (Dkt. 1).) A eye drop is applied by the patient and is suppose to deliver harmless relief to the eyes, the most sensitive part of the human body. (Compl. ¶ 8.) The Drug Company designs, manufactures, markets, and sells the eye drops with the intent that the eye drops will help relieve eye irritation. (Compl. ¶ 8.) If the eye drops works as intended and is properly used by the patient, the patient should not receive any harm to the eyes. (Compl. ¶ 8.)

- Prior to the time Susan's eye drops was manufactured and distributed, numerous consumers received contaminated eye drops while using the eye drops causing the Drug Company to recall their eye drops in 2006. (Compl. ¶ 9);

- The eye drops are unsafe for its intended or reasonably foreseeable use because it can and does cause severe injuries in consumer's eyes (Compl. ¶ 9);

- The eye drops were in a defective condition at the time it was designed, manufactured, sold, and/or marketed by the Drug Company at the time it left their possession because it was defectively manufactured, defectively designed, and contained insufficient warnings concerning its risks (Compl. ¶ 13);

- The eye drops was unreasonably dangerous and thus defective because, among other things, it gave Susan a severe eye infection and reaction than a properly functioning eye drops should have given her (Compl. ¶ 13);

- The Drug Company misrepresented to Susan and all consumers of the dangerous condition of the eye drops (defined in the fact section of the complaint as the risk of severe eye injury from the eye drops) or the facts that made it dangerous (Compl. ¶ 17);

- The Drug Company failed to provide the FDA with information or data relevant to the safety of the eye drops (which is relevant to the warnings issue because the FDA often requires Drug Company to strengthen their warnings because of adverse events);

- The Drug Company failed to conduct adequate testing and post-recall surveillance to determine the safety of the eye drops (which is relevant to the warnings issue because Drug Company have a duty to strengthen their warnings based on their own recall);

- The Drug Company misrepresented that the eye drops was safe for use (Compl. ¶ 25j);

- The Drug Company failed to list contamination as an adverse event (Compl. ¶ 25n);

- The Drug Company marketed the eye drops for unsafe uses (Compl. ¶ 25p); and

- The Drug Company failed to communicate to the FDA, Susan, physicians, distributors, pharmacists, and/or the general public, that proper use of the eye drops could cause serious injury to the eyes (Compl. ¶ 30).

Collectively, these allegations make it abundantly clear that Susan is alleging that the eye drops was defective because it provided the wrong information to all consumers about the following risks: (1) that the eye drops could give patients a severe eye injury instead of the therapeutic level listed in the package insert; (2) severe eye injury is a potential adverse event; and (3) prior to the time Susan's eye drops was manufactured and sold, numerous patients had received contaminated eye drops while properly using the eye drops.

**b. The complaint contains sufficient allegations that the Drug Company knew or should have known that patients could receive severe eye injury while properly using the eye drops.**

The Drug Company' assertion that the complaint contains insufficient allegations that they knew or should have known about the dangerous condition of the eye drops ignores numerous factual allegations about their knowledge. The complaint alleges that the Drug Company knew or should have known that the eye drops was defective because numerous patients had received contaminated eye drops while using the eye drops as prescribed and that the Drug Company received reports of these adverse events:

- Prior to the time Susan's eye drops was manufactured and distributed, numerous patients received contaminated eye drops while using other Eye drops the Drug Company manufactured;

- The Drug Company knew or should have known that patients were receiving contaminated eye drops from proper use of the eye drops because they previously had recalled eye drops;

- In many cases of contamination of eye drops in general, a cleansing bleach was one indicator;

The complaint also fairly alleges that, if the Drug Company did not know about the dangerous condition of the eye drops, their lack of knowledge is due to their negligence:

- <u>The Drug Company failed to obtain easily accessible information or data relevant to the safety of the eye drops</u> (Compl. ¶ 25e);
- <u>The Drug Company failed to perform sufficient testing of the eye drops to confirm or ensure it was safe for its intended use</u> (Compl. ¶ 25f);
- The Drug Company failed to conduct adequate testing and post-marketing surveillance to determine the safety of the eye drops (Compl. ¶ 25i);
- The Drug Company conducted inadequate and/or insufficient research into the safety of the product prior to sale (Compl. ¶ 25l); and
- The Drug Company conducted inadequate and/or insufficient monitoring or research regarding adverse events (Compl. ¶ 25m).

Collectively, these allegations provide sufficient factual support for Susan's allegation that the Drug Company failed to warn of risks that were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time the eye drops was manufactured and distributed. (Compl. ¶ 17.) This is all-too common today with food poisoning and product defect cases at an all-time high. Employees must be hired and trained right or dangerous occurences will continue to happen. Our country is spiring dangerously out of control with no one in charge.

**c. Susan sufficiently alleges that the Drug Company's negligent misrepresention caused Susan's severe eye injury to both eyes using the Drug Company's eye drops.**

As a preliminary matter, proximate cause is a question of fact; an allegation that a defect was a proximate cause is a factual allegation. An eye drop is suppose to soothe not cause a painful, searing, and permanent eye injury. Back in the 1950's companies were more honorable then. They admitted they were wrong. Today, companies simply hire top law firms to protect their assets.

- The Drug Company knew or should have known that patients were possibly receiving contaminated or defective eye drops from proper use of the eye drops (Compl. ¶ 9);

- The Drug Company misrepresented the consequences to Susan of the dangerous condition of the eye drops or the facts that made it dangerous (Compl. ¶¶ 17, 25a);

- The Drug Company knew that the eye drops could create a high risk of unreasonable, dangerous side effects, including that proper use of the eye drops can cause death, but they failed to communicate to the FDA, Susan, physicians, distributors, pharmacists, and/or the general public, that proper use of the eye drops could cause serious injury (Compl. ¶ 25a); and

- Susan and others, including, without limitation, Susan's physician(s) and her pharmacist(s), justifiably relied on the Drug Company' misrepresentations (Compl. ¶ 31e).

These allegations are more than sufficient to demonstrate that Susan used the eye drops and received severe eye injuries to both eyes. Therefore, Susan has sufficiently pleaded her failure-to-warn claim.

**3. Susan has sufficiently pleaded her design-defect claim.**

Although the Drug Company does not specifically identify why Susan's complaint is deficient as to her design-defect claim, Susan has sufficiently pleaded ther claim. The complaint alleges:

- Susan was properly using the eye drops designed by the Drug Company when she was injured (Compl. ¶¶ 6-7);

- a properly designed eye drops "will not [provide] a severe eye injury" (Compl. ¶ 8);

- Susan's eyes were severely injured, and the doctor's report shows the eye drops were to blame (Compl. ¶ 10);

- Susan was not aware of the eye drops's defective condition, and the eye drops reached her without substantial change to its condition (Compl. ¶¶ 14-15); and

- because Susan received the eye drops "failed to perform as safely as an ordinary consumer would expect when used [in] an intended or reasonably foreseeable manner." (Compl. ¶ 18.)

Moreover, despite the fact that California no longer requires proof of an alternative design for a claimant to recover [for] defective design, Susan also alleges that a safer, alternative design was available. (Compl. ¶ 19.) Because Susan has plead numerous specific facts concerning her design-defect claim and because the Drug Company concede that "[t]here is no question that Plaintiff's complaint . . . encompasses in its language California's consumer-expectations test," the Drug Company have no basis for arguing that "[n]othing in Plaintiff's pleading is not wholly generic." (Dkt. 19 at 8.) Susan has, accordingly, sufficiently pleaded her design-defect claim.

**4. Susan has sufficiently pleaded her negligence claim.**

The Drug Company appear to argue that Susan's complaint is speculative because it specifies the numerous ways in which the Drug Company were negligent. But Susan has sufficiently pleaded her negligence claim. (Dkt. 19 at 12.) Susan alleges:

- Susan was properly using the eye drops designed, manufactured, and distributed by the Drug Company (Compl. ¶¶ 6-8);

- Although a properly functioning and designed eye drops should not have delivered a severe eye injury, Susan received eye injuries to both eyes (Compl. ¶¶ 8, 10);

- Her injury was caused by the eye drops' defective design, manufacture, or marketing (Compl. ¶¶ 13, 17); and

- The Drug Company—prior to Susan's injury—was aware that properly worn eye drops could cause severe injury (Compl. ¶ 9).

After alleging these facts, he specified that the Drug Company were negligent by, among other ways:

- providing misleading and insufficient warnings regarding the eye drops to Susan or the pharmacy;

- failing to use due care in designing and manufacturing the eye drops;

- failing to use proper materials reasonably suited to the manufacture of the eye drops;

- failing to provide to the FDA information or data relevant to the safety of the eye drops;

- failing to perform sufficient testing of the eye drops to confirm or ensure it was safe for its intended use;

- failing to conduct adequate testing and post-marketing surveillance to determine the safety of the Eye drops; and

- failing to inspect and test the product.

(Compl. ¶ 25.) Based on the fact that Susan died from receiving a severe injury to both eyes from a eye drops that was not intended to deliver a severe injury, these specific factual and legal allegations are simply not speculative.

Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake. [K]nowledge and other conditions of a person's mind may be alleged generally." Although allegations of "who, what, when, where, and how" must be pleaded, "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." Drobnak v. Andersen Corp., 561 F.3d 778, 783-84 (8th Cir. 2009). In other words, Susan merely has the burden of "plead[ing] the equivalent of the first paragraph of any newspaper story." Drobnak, 561 F.3d at 784. Susan alleges that:

- Who: the Drug Company, their employees, agents, representatives, and distributors;
- What: fraudulently misrepresented, by omission, that unreasonable side effects, such as injuries to your eyes, could accompany proper use of the eye drops;
- To Whom: to the FDA, Susan, her physicians, and pharmacists;
- When: at the time that Susan was bought the eye drops and the proper use of her eye drops;

How: by failing to disclose the fact that patients were receiving contaminated eye drops before from proper use of the eye dropses, even through the Drug Company was on notice through the FDA, and medical examiners' adverse event reports.

(Compl. ¶¶ 9, 10, 29-31.) Indeed, although Susan only has a duty to plead the Drug Company' state of mind generally, she has alleged specific facts demonstrating that they had knowledge from adverse event reports that proper use of their products caused injury. See Fed. R. Civ. P. 9(b). Any additional or more specific facts remain "peculiarly within the opposing party's knowledge." Id. at 783. Susan's complaint satisfies her burden of "plead[ing] the equivalent of the first paragraph of any newspaper story." Drobnak, 561 F.3d at 784.

**B. The Drug Company's actions in other similar cases and in ther matter demonstrate that they have notice of the claims against them.**

Even if there any doubt existed about the sufficiency of the complaint, the Drug Company' conduct in other lawsuits and recalls demonstrates that they have sufficient notice of the complaint against them. They have answered nearly identical complaints in similar lawsuits without arguing that the allegations are not plausible. Indeed, in the few actions in which they have challenged the sufficiency of the pleaded allegations based on Iqbal, Twombly, or a similar doctrine, the courts—including federal district courts—have uniformly rejected their contentions. Moreover, in ther action, they have already begun discovery. The complaint in ther action, the close sibling of the complaints in numerous prior actions, meets the requirements for notice pleading under the Federal Rules of Civil Procedure.

**C. Alternatively, if the Court grants the Drug Company' motion,  Susan requests leave to amend her complaint to add additional factual allegations.**

If the Honorable Court concludes that additional factual pleading is required, Susan respectfully requests leave to amend. Generally, leave to amend "should, as the rules require, be

'freely given.'' Foman v. Davis, 371 U.S. 178, 182 (1962). Therefore, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," the moving party should be allowed to test her claim on the merits. Id. Furthermore, "dismissing a claim with prejudice for failure to comply with Rule 8(a) tends to undermine one of the policies of the Federal Rules of Civil Procedure: facilitating a decision on the merits rather than on pleading technicalities. Accordingly, dismissal with prejudice is an extreme sanction that must be examined carefully." North Carolina v. McGuirt, 114 Fed. App'x 555, 567 (4th Cir. 2004). The only alleged defect of Susan's complaint is that the Drug Company need additional facts to put themselves on notice of her claims. Susan can add these additional facts if ther Court finds that her current complaint fails to comply with Federal Rule of Civil Procedure 8.

## CONCLUSION

For all of the foregoing reasons, Susan respectfully requests that ther Court deny the Drug Company' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6). In the alternative, if the Court determines that Susan's complaint does not meet the requirements of Federal Rule of Civil Procedure 8, Susan seeks leave to amend her complaint to provide additional factual allegations.

Respectfully Submitted,

DATED: August 28, 2015

BY_____*Timothy Chey*_____

Timothy Chey, Esq

Attorney At Law